

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NS:MEG/JPM

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 21, 2020

<u>By Hand</u>

The Honorable Alka Sagar
United States Magistrate Judge
Central District of California
350 West 1st Street
Los Angeles, California 90012

   Re: United States v. Maliek Miller
     <u>Docket No. 20-MJ-646  </u>

Dear Magistrate Judge Sagar:

  The government respectfully submits this letter in support of its application for an order directing that the defendant Maliek Miller, a resident of Brooklyn, New York who stands charged in the Eastern District of New York with a federal firearm offense, be removed to the Eastern District of New York in custody. As set forth in more detail below, the defendant, a convicted felon, fired a gun on the Fourth of July in close proximity to a group of people during a dispute in a New York City Housing Authority complex. He did so while on parole—and only a little more than a year after having been released from prison—for a prior shooting that left the victim with multiple gunshot wounds. On July 7, 2020, the gun used by the defendant three days earlier to commit the charged offense was one of two firearms used to shoot at a woman who was involved in the earlier dispute; she was struck repeatedly by gunfire and later died from her injuries.

  The defendant was arrested last night in Los Angeles, having left New York following his commission of the charged offense in violation of the terms of his parole. For the reasons set forth below, the government submits that the defendant should be removed to the Eastern District of New York in custody, as he poses a danger to the community and a risk of flight, and no combination of conditions can ensure his return to court and secure the safety of the community.[1]

---

[1] Upon the defendant's return to the Eastern District of New York, the government intends to request the entry of a permanent order of detention pending trial in this district and therefore cites to relevant Second Circuit precedent herein.

I. The Defendant Fired a Weapon in Close Proximity to Several People

As set forth in detail in the complaint upon which the arrest warrant was issued, on July 4, 2020, the defendant, accompanied by another man, approached a group of people that were congregated in front of a residential building in the Louis H. Pink Houses (the "Pink Houses") in East New York, Brooklyn. An argument ensued and the defendant became involved in a physical confrontation with the group. The defendant then produced a firearm and fired one shot while in close proximity to several other people; no one was struck by the bullet. The defendant quickly fled the area on foot, but left behind a driver's license bearing his name and photograph and a single .380 caliber shell casing, both of which are now in the custody of law enforcement.

Among those present in the group the defendant confronted was a woman who, three days later on July 7, 2020, was repeatedly shot in the Pink Houses; she later died from her injuries. The New York City Police Department ("NYPD") recovered two different caliber shell casings (.380 caliber and .40 caliber) from the scene of the July 7 shooting. An analyst from the NYPD Firearm Analysis Section compared the .380 caliber shell casings recovered from the July 4 shooting and the July 7 shooting and determined that they were fired from the same firearm.

II. The Defendant's Criminal History

Despite his relatively short life—he is only 26 years old—the defendant has incurred two prior convictions for felony offenses involving firearms. In 2014, at the age of 20, the defendant was arrested in possession of a loaded firearm. He subsequently pled guilty to Attempted Criminal Possession of a Weapon in the Second Degree (Loaded Firearm), a class D felony under the New York State Penal Law, and was sentenced to two years' imprisonment, plus two years' post-release supervision. In 2016, at the age of 22—while his earlier gun case was still pending—the defendant was arrested for shooting a man twice in the back and once in the leg. The man survived, and the defendant was subsequently convicted of Attempted Assault in the First Degree (Intent to Cause Serious Injury with a Weapon), a class C felony under the New York State Penal Law, and sentenced to 42 months' imprisonment, plus five years' post-release supervision. The defendant was released from prison and commenced his five-year term of parole supervision on May 9, 2019.

In addition, the defendant was arrested in Pennsylvania on July 3, 2020, the day before the shooting incident at issue herein, and charged with Driving Under the Influence of Alcohol or a Controlled Substance; no additional information related to this arrest is presently available in the defendant's criminal history report.

III. Legal Standard and Procedure

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the

defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). While a finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), risk of flight can be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Four factors guide the Court's determination of whether a defendant should be released on bail:

(1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm . . .";

(2) "the weight of the evidence against the person";

(3) "the history and characteristics of the person, including . . . the person's character, . . . past conduct, . . . [and] criminal history, and record concerning appearance at court proceedings"; and

(4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g).

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffers. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or even for discovery." Id. (internal quotation marks omitted). Indeed, the Second Circuit has reversed district courts where they have not credited the government's proffer, including proffers with respect to a defendant's dangerousness. See, e.g., Mercedes, 254 F.3d at 437 ("Roman has twice been convicted of weapon possession – one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to Roman's dangerousness.").

IV.     Argument

    A.     The Defendant Poses a Serious Danger to the Community

No bail package will protect the community from the defendant, whose conduct in this instant case and criminal history reveals that he is incorrigible and indifferent to the well-being of others.

First, the conduct with which the defendant is charged—possessing ammunition after having been convicted of a felony offense—is serious, and made that much more serious by the fact that he discharged the ammunition from a gun while in close proximity to other people and near the entrance to a large residential building. United States v. Dillard, 214 F.3d 88, 94 (2d. Cir. 2000) ("The risk of violent use posed by a convicted felon's possession of a firearm is significant."). A person who so readily turns to a firearm and violence to solve a dispute poses a danger to the community even under the most stringent release conditions particularly where, as here, the violence occurs while the defendant is under the supervision of the NYSDOCCS. See United States v. Christian Williams, No. 20-CR-293 (S-2) (WFK), ECF Docket Entry14 (E.D.N.Y. August 13, 2020) (overturning Magistrate Judge's decision to release defendant charged with firearm offense and finding inter alia dangerousness based on defendant's non-compliance with parole and because "instant and past offense involved the use of a firearm" (citations omitted)).

Second, the government's case against the defendant is strong. The witness accounts are corroborated by the surveillance footage which captured the defendant's movements in the minutes before and immediately after the shooting. The defendant also unwittingly left a driver's license bearing his name and photograph at the scene of the shooting.

Third, the defendant's criminal history reveals a complete disregard for the law. This arrest reflects the second time the defendant has fired a weapon at or near other people, and his third felony offense. In 2016, while awaiting trial for an earlier gun offense, he repeatedly shot another man, seriously injuring him. The prison sentences and periods of court supervision imposed for the serious, violent offenses of which he was previously convicted have proven to have little to no deterrent effect. Once again, only weeks ago, the defendant used a weapon and violence to solve a problem.

When the possibility of violence is so great, even onerous conditions of release are inadequate to protect the community. See United States v. Kelly, No. 19-CR-286 (AMD), 2020 WL 2528922, at *3 (E.D.N.Y. May 15, 2020) ("Nor are the defendant's proposed measures—that he be kept on home confinement and monitored by pretrial services—sufficient to eliminate the danger to the community."). That is why the Second Circuit has repeatedly rejected elaborate bail packages for violent defendants, even ones that include "home detention and electronic monitoring," which the Court has explained try to "replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the

4

community would be left largely to the word of [the defendant] that [he] will obey the conditions." United States v. Millan, 4 F.3d 1039, 1049 (2d Cir. 1993) (citation and internal quotation marks omitted).

      B.    The Defendant Poses a Risk of Flight

The defendant also poses a risk of flight given that he traveled thousands of miles away from home shortly after this shooting in violation of the terms of his parole. His repeated failure to abide by the terms of court-ordered supervision is demonstrated by (i) committing the instant offense; (ii) traveling to and being arrested in Pennsylvania on July 3, 2020; (iii) travelling to California following his commission of the instant offense without notifying or obtaining authorization from his parole officer. In addition, the defendant is facing a significant amount of time in prison, up to ten years' imprisonment, if convicted of this offense. The defendant may be further incentivized to flee because he chose to commit this violent crime while on parole, a choice that will likely result in an additional sentence of incarceration in state court. Because he was unable to abide by even the most basic rule of supervision—not to commit any new crimes—he should not be trusted to return to court as directed when potentially facing two new terms of incarceration.

When the incentive to flee is so strong, no combinations of sureties and other restrictions can assure the defendant's appearance. See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant was charged under § 924(c), faced a presumption against release, and a mandatory minimum sentence that incentivized fleeing). That remains true even if the defendant accepts electronic surveillance and home confinement. See United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks omitted); accord United States v. Dono, 275 F. App'x 35, 37 (2d Cir. 2008) (Sotomayor, J., Livingston, J., and Preska D.J. (sitting by designation)) (same).

V.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court order that the defendant be removed to the Eastern District of New York in custody.

                                    Respectfully submitted,

                                    SETH D. DuCHARME
                                  Acting United States Attorney

                By:          /s/
                      Margaret E. Gandy
                      James P. McDonald
                      Assistant U.S. Attorneys
                      718-254-7000